IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00683-PSF-MJW

MARK WHITE,

     Plaintiff,

v.

HOME DEPOT U.S.A., INC., a Delaware corporation

     Defendant.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support Brief (Dkt. # 80) filed on May 4, 2006, together with Exhibits A through N. Plaintiff filed his opposition on June 23, 2006 (Dkt. #99), together with Exhibits 1 through 38.  Defendant filed its reply on July 10, 2006 (Dkt. #108), together with additional Exhibits O through V.

The Amended Final Pretrial Order was entered on May 17, 2006 (Dkt. # 87). The case is set for a seven-day trial to a jury commencing September 11, 2006.  The matter is ripe for determination.  The Court has determined that oral argument will not be of material assistance.

## I.    BACKGROUND

Plaintiff Mark White, an African American, was hired as a Loss Prevention Manager ("LPM") by Defendant Home Depot U.S.A., Inc., ("Home Depot") and began working in April 2003 (Defendant's Motion at 3; Plaintiff's Response at 4).  Plaintiff

continued in the position of LPM until at least the date of filing of his Amended

Complaint, July 1995, and apparently remains in that position until the present time

(*see* Amended Complaint, ¶ 4.3; Amended Final Pretrial Order at 2).

Prior to his hire, plaintiff was interviewed for the position by the District LPM,

Thomas McKnew, and other Home Depot employees, Kathy Metwonk, Daren Masten,

and Richard Leo.  Plaintiff's Response at 3.  Home Deport offered, and plaintiff

accepted, a starting salary of $42,000 per year.  At or about the same time plaintiff was

hired as a LPM, Home Depot also hired five Caucasian LPMs, two at the same salary

as plaintiff at $42,000 per year, and three at salaries of $43,000 to $45,000 per year

(Defendant's Motion at 4).

Plaintiff was under the supervision of McKnew from April 2003 until May 2004,

when McKnew was promoted to Regional Loss Prevention Manager ("RLPM").  *Id.* at 3.

On or about May 2004, James Firsich replaced McKnew as plaintiff's supervisor.  *Id.*

In May 2005, Brian Varner became White's supervisor (Plaintiff's Response at 15).

Although no specifics are provided in the Amended Complaint, plaintiff alleges

that McKnew and others in management "targeted" him because of his race and that

McKnew created a hostile work environment (Amended Complaint, ¶¶ 4.7-4.8).  In his

Response plaintiff asserts, *inter alia*, that McKnew did not give him the resources he

needed to fully perform and meet his performance goals and that he treated plaintiff in

a humiliating manner (Plaintiff's Response at 5).  More specifically, plaintiff asserts that

on November 26, 2003, McKnew questioned White about "clearance SKUs" and

questioned White's intelligence.  *Id.* at 7.  He further alleges that on December 6, 2003,

2

McKnew yelled at plaintiff in his office using an expletive, a demeaning tone and a voice so loud it caused the Store Manager to check in on the office. *Id.* Plaintiff alleges that sometime in 2003, McKnew gave plaintiff a "menial assignment" within earshot of other LPMs, "speaking down to him." *Id.* at 7-8. Plaintiff claims that on April 14, 2004, McKnew insulted him in front of other employees for his work on exceptions reports and on May 10, 2004 criticized plaintiff's management of a loss incident, yelled at him using an expletive and threatened to "write-up" plaintiff *Id.* at 8-9. On August 16, 2004, according to plaintiff, McKnew interrupted him during a presentation and used a demeaning and disrespectful tone when addressing him. *Id.* at 11.

According to his Amended Complaint, the first date on which plaintiff apparently complained about McKnew's conduct was February 18, 2005 when he reported the alleged racially hostile work environment on the Home Depot Aware Line (Amended Complaint, ¶ 4.11). Although no dates are provided or positions specified, plaintiff alleges that after that date he was denied promotion opportunities and/or was purposely not informed of promotion opportunities and was given a poor performance rating apparently in retaliation for making the complaint (*id.*, ¶¶ 4.10; 4.14). Plaintiff also alleges that he was discriminated against and retaliated against in the conditions of employment because of his race (*id.*, ¶ 4.13).

## II.   PLAINTIFF'S COMPLAINT AND AMENDED COMPLAINT

Plaintiff filed his original complaint on April 14, 2005, alleging that defendant's action violated 42 U.S.C. § 1981. Although the complaint did not set forth enumerated claims, it appears that plaintiff was alleging violations of the statute by the defendant

3

due to: (1) his initial employment at a pay rate lower than that of other LPMs of equal or less experience (Complaint, ¶ 4.5); (2) subjecting him to a hostile work environment because of race (Complaint, ¶¶ 4.6-4.8); and (3) denial of promotion opportunities, apparently due to racial discrimination (Complaint, ¶ 4.10).  Plaintiff also alleged in the original complaint that he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and stated that when the charge was processed or the requisite time passed, he would amend his complaint to add claims under Title VII, 42 U.S.C. 2000 *et seq.* (Complaint, ¶ 1.2).

By Order entered on July 13, 2005 (Dkt. # 18) the Court denied a motion by plaintiff to stay proceedings on his Section 1981 claims pending the filing of his Title VII claim, primarily because defendant stated that it agreed to allow plaintiff to amend his complaint to assert the Title VII claim once he receives his right to sue letter and that it agreed that plaintiff could take discovery relevant to his Title VII claim "starting now" before the claim is "officially added."  *See* Order at 2.

In that same order, the Court denied a motion filed by plaintiff for leave to file a proposed amended complaint, as defendant had not filed an answer but only a motion to dismiss plaintiff's complaint, and therefore leave of court was not necessary.  In the order the Court denied defendant's motion to dismiss the complaint.  *See* Order at 2.

On July 11, 2006 plaintiff filed his Amended Complaint (Dkt. # 19), and the Amended Complaint became the operative pleading in this case.  On July 25, 2005, defendant filed a motion to dismiss the hostile work environment claim as pled in the

Amended Complaint (Dkt. # 21).  That motion was denied by Order of the Court on October 31, 2005 (Dkt. # 27).

Although the Amended Complaint asserts again that plaintiff "will seek to amend this Amended Complaint to include claims under Title VII" once the EEOC proceedings are completed (Amended Complaint, ¶ 1.2), the record does not reflect that such motion to amend was ever filed.  Nonetheless, the Final Pretrial Order includes references to plaintiff's "Title VII claims of discrimination" and neither defendant's Motion for Summary Judgment, nor its reply brief filed after the Final Pretrial Order, argue that Title VII claims are not included in this case.  Accordingly, the Court will assume that plaintiff's Amended Complaint is pled under both § 1981 and Title VII.

Therefore, plaintiff's Amended Complaint, although again not enumerating the separate claims, appears to set forth essentially the same three claims under 42 U.S.C. § 1981 and Title VII which he alleged in his original complaint: (1) discrimination in his initial employment at a pay rate lower than that of other non-African-American LPMs of equal or less experience (Amended Complaint, ¶ 4.5), and discrimination in the conditions of employment resulting in "denial of promotions in the Loss Prevention department, lesser pay raises and bonuses, negative performance reviews, and disciplinary actions." (*id.*, ¶ 4.6);  (2) subjecting him to a hostile work environment because of race (*id.,* ¶¶ 4.6-4.8); and (3) denial of promotion opportunities, and/or purposely not being informed of promotion opportunities, receiving a negative performance review, having his transfer request denied and his complaints to the

defendant's Human Resources office neglected, apparently due to retaliation and racial discrimination (*id.,* ¶¶ 4.6, 4.10, 4.14-4.15, 5.8).

## III.   PRELIMINARY RULINGS

Defendant's motion for summary judgment seeks dismissal of all three of plaintiff's claims without differentiating as to whether the claim is brought under 42 U.S.C. §1981 or Title VII.

Liability for hostile work environment under 42 U.S.C. § 1981 is measured by the same test as under Title VII.  *See e.g. Witt v. Roadway Exp.*, 136 F.3d 1424, 1432 (10th Cir.), *cert. denied*, 525 U.S. 881 (1998); *Paris v. Southwestern Bell Telephone Co.*, 94 F.App'x 810, 812 (10th Cir.), *cert. denied*, 543 U.S. 1005 (2004).  In addition, the analytical burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies to racial discrimination claims brought under § 1981 as well as to Title VII claims.  *Kendrick v. Penske Transp. Serv's, Inc.*, 220 F.3d 1220, 1226, n.4 (10th Cir. 2000); *see also Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002).

Thus while the substantive legal analysis of defendant's motion may be the same for the claims whether pled under § 1981 or Title VII, there are procedural differences that apparently apply here to limit plaintiff's claims.  Although plaintiff's Amended Complaint does not specify the date on which he first filed his charge with the EEOC, his Motion to Stay (Dkt. # 8) states that the charge was filed with the EEOC on or about March 23, 2005 (*id.* at 1).  Although no copy of the charge has been provided

to the Court, plaintiff's Motion to Stay states that it is "based upon the same transaction or series of transactions as his § 1981 claims." *Id.*

Title VII claims can only be brought as to actions by the employer that were first the subject of a timely filed charge of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1). In Colorado, the charge of discrimination may only include actions taken within the preceding 300 days prior to the date of the charge of discrimination, unless the claims are part of a continuing violation. *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415 & n. 6 (10th Cir. 1993). The Supreme Court has held that discrete acts of employment discrimination such as termination, failure to promote, denial of transfer, or refusal to hire, must have occurred within 300 days of the filing of an EEOC charge in order to be actionable. *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114-115 (2002). In addition, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and a plaintiff can only bring suit on such discrete acts if they are the subject of a timely filed charge. *Id.* at 114.

Applying these principles to the instant case, it appears that some of the discrete actions alleged in plaintiff's Amended Complaint, including at least his hiring at an alleged disparate pay rate in April 2003, as well as any denial of pay increases, bonuses, promotions or denials of transfers that occurred more than 300 days before March 23, 2005, cannot be the subject of his claims under Title VII. To the extent any such claims are asserted under Title VII they are DISMISSED, *sua sponte.*

In addition, plaintiff states in his response that he "is voluntarily withdrawing his discrimination and retaliation in promotion claims." Plaintiff's Response at 1, n.2. The Court understands this to mean that plaintiff is voluntarily dismissing his claims set forth in paragraph 4.10 of the Amended Complaint, described above as denial of promotion opportunities, and/or purposely not being informed of promotion opportunities, due to alleged racial discrimination or due to alleged retaliation. Those claims are therefore DISMISSED with prejudice.

Accordingly, the only claims remaining are plaintiff's claims that he was (1) subject to a racially hostile work environment in violation of 42 U.S.C. § 1981 and Title VII; (2) discriminated against in his initial employment at a pay rate lower than that of other non-African-American LPMs of equal or less experience in violation of 42 U.S.C. § 1981, only, or in the conditions of employment resulting in lesser pay raises and bonuses, negative performance reviews or disciplinary actions in violation of 42 U.S.C. § 1981 and Title VII; and (3) retaliated against after making a complaint in February 2005, in violation of 42 U.S.C. § 1981 and Title VII, by receiving a negative performance review, having his transfer request denied and his complaints to the defendant's Human Resources office neglected.

## IV.   DEFENDANT'S MOTION

Defendant asserts that it is entitled to summary judgment on plaintiff's claim of harassment and hostile work environment because any hostility was not racially motivated, nor was it severe and pervasive, and because the defendant took reasonable and prompt steps to end any such hostility (Defendant's Motion at 19-22).

Defendant also asserts that plaintiff's claims of discrimination in the terms and conditions of employment should be dismissed because plaintiff has failed to show that he was subject to actionable adverse employment actions, that plaintiff has no direct evidence of racial discrimination, and in any event defendant has come forward with a legitimate, nondiscriminatory reasons for its actions (*id.* at 15-16). In addition, defendant seeks to rebut plaintiff's claims of discriminatory purpose with the same-actor inference, claiming that because McKnew made the decision to hire plaintiff, it is unreasonable to conclude he would rapidly develop a bias against an African-American after the hiring decision. *Id.* at 14-15.

With respect to plaintiff's retaliation claims, defendant argues again that the actions at issue are not actionable adverse employment actions nor are they temporally connected to his making a complaint in February 2005 (*id.* at 23-24). Plaintiff essentially responds, with his lengthy recitation of facts he finds in the discovery record, that he has come forward with sufficient evidence as to each claim to demonstrate a genuine issue of material fact as to each claim so that the matter must be presented to a jury.

## V.   STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995). In other words, there "must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court must view the factual record in the light most favorable to the nonmovant.  *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If a nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," then that failure "necessarily renders all other facts immaterial" and the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## VI.  ANALYSIS

As Defendant's Motion sets forth various grounds as to the several claims asserted by plaintiff, this Order separately addresses each of plaintiff's claims and defendant's related arguments.

### A.  Plaintiff's Claim of Racially Hostile Work Environment

Claims of racially hostile work environment are actionable under Title VII. *Bolden v. PRC, Inc.*, 43 F.3d 545, 550 (10th Cir. 1994), *cert. denied*, 516 U.S. 826 (1995), citing *Griffith v. State of Colorado, Div. of Youth Serv.*, 17 F.3d 1323 (10th Cir. 1994) and *Hicks v. Gates Rubber Co.*, 928 F.2d 966 (10th Cir. 1991), or as noted above, under § 1981.  *See Witt v. Roadway Exp.*, 136 F.3d at 1432.

10

In order to demonstrate a racially hostile work environment or racial harassment claim under either statute, the plaintiff must show that (1) he is member of a protected class, (2) the harassment was pervasive and severe enough to alter the terms, conditions, or privilege of employment, and (3) the harassment stemmed from racial animus. *See Bolden*, 43 F.3d at 551. Whether conduct is sufficiently severe or pervasive to constitute actionable harassment depends on all the circumstances. These may include (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating as opposed to a "mere" offensive utterance, and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Workplace conduct only constitutes an impermissible racially hostile work environment if it is racial or stems from racial animus. *Bolden*, 43 F.3d at 551. "General harassment if not racial or sexual is not actionable." *Id.* Plaintiff must show "more than a few isolated incidents of racial enmity." *Hicks*, 833 F.2d at 1412. "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551. Defendant asserts that any harassment or hostility present here was not so severe and pervasive under the above-cited standard so as to alter the conditions of plaintiff's employment (Defendant's Motion at 21).

Plaintiff's Amended Complaint provides conclusory statements of hostile environment and harassment, but little in the way of specifics of the events that give rise to the alleged hostile environment. Plaintiff's Response, however, details plaintiff's complaints about several incidents that apparently occurred between April 2003 and

November 2004, all of which relate to conduct by his supervisor, McKnew (Plaintiff's

Response at 6-11).  The Court has reviewed the assertions made by plaintiff, some

of which are set forth above and need not be detailed here.  The Court has viewed

plaintiff's assertions in a light most favorable to plaintiff's position.

Plaintiff's claims of alleged racially hostile work environment and racial

harassment stem primarily from the work-related relationship between plaintiff and

McKnew, either when he was acting as plaintiff's supervisor or as the supervisor of

plaintiff's supervisor.  The majority, if not all, of the events of which plaintiff complains

arose in the context of McKnew supervising plaintiff or reprimanding him for his work

performance or workplace conduct.  While plaintiff claims that McKnew belittled him,

screamed at him in an "extremely demeaning tone" (Response at 7), gave him a menial

assignment and spoke down to him about the assignment, required him to perform

menial tasks, "verbally insulted" him in front of other employees (*id.* at 8), and used

offensive language, none of the assertions indicate the use of racial slurs or language

that is commonly associated with expressions of racial prejudice, even on a sporadic

basis.  Plaintiff testified that there were no racially derogatory comments addressed

personally to him (Depo. of White, Exhibit B, Part 1 to Defendant's Motion at 139-141).

To be sure, McKnew's asserted use of profanity and abusive language in the

workplace may have been offensive to plaintiff, but having a contentious relationship

with one's supervisor does not rise to the level of an abusive and hostile work

environment.  *See Trujillo v. Univ. of Colo. Health Science Ctr.*, 157 F.3d 1211, 1214

(10th Cir. 1998).  As the court stated, "federal law does not guarantee a utopian

12

workplace, or even a pleasant one . . . .  [P]ersonality conflicts between employees are not the business of the federal courts."  *Id.* at 1214 (quoting from *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994) (internal quotation marks omitted)).  To summarize and place in a race context what the Tenth Circuit stated in *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994), which analyzed a gender-based hostile work environment claim, if the nature of an employee's environment, however unpleasant, is not due to his race, he has not been the victim of race discrimination as a result of that environment.

Plaintiff does assert one incident "in early 2005" when McKnew, in a conversation with Firsich, apparently used the term "boy" in referring to plaintiff (Depo. of White, Exhibit 1, Part 2 to Plaintiff's Response, at 191-92).  According to plaintiff's testimony, McKnew made a statement to Firsich along the lines of "get [your] boy [Plaintiff] to do menial tasks for him."  (*Id.*)  Plaintiff did not directly hear this comment made by McKnew and only learned of it when it was related to him by Firsich.  Firsich testified that while he felt the remark was not "politically correct," he did not think it was indicative of discrimination (Depo. of Firsich, Exhibit 16, Part 1 to Plaintiff's Response at 79-80).  Plaintiff points to no other specific racially charged comments made by McKnew to him.

Plaintiff claims that the arguably racially derogatory comment by McKnew, although not mentioned directly to him, supplies evidence of a motive for "treating White different and more harsh than other Caucasian LPMs."  Plaintiff's Response at 42.  However, even if this one comment demonstrates a racial animus or "motive" for

13

discrimination in the conditions of employment as discussed below, it does not amount to the "steady barrage of opprobrious racial comments" required to demonstrate a hostile racial environment. *See Bolden*, 43 F.3d at 551. Moreover, plaintiff fails to articulate how any alleged racial comments unreasonably interfered with an employee's work performance. *See Harris*, 510 U.S. at 23. Plaintiff's showing thus falls short of the *Bolden* requisites for demonstrating a racially hostile work environment. Defendant is entitled to summary judgment on claims of an impermissible racially hostile work environment.

Plaintiff appears to suggest in his response that resolution of a pending discovery dispute, set forth in Plaintiff's Objection to the Magistrate Judge's ruling of May 26, 2006 (Dkt. # 93), may yield additional evidence of "objective" racially hostile conduct engaged in by defendant towards others, and that such evidence will be filed as a supplement to his response (Plaintiff's Response at 2-3). In *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir.), *cert. denied,* 534 U.S. 1019 (2001), the court stated that the abusiveness of the working environment is judged according to both subjective and objective standards, meaning "the conduct must be 'severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive,' and the victim must 'subjectively perceive th[at] environment to be abusive.'" Thus evidence of objective racial hostility may be relevant, but unless the hostility was also expressed to plaintiff, it does not bear on his claim of hostile work environment. A plaintiff cannot subjectively perceive behavior towards others as creating a hostile work environment unless he knows about the behavior. *See Hirase-*

*Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995).  Plaintiff's failure to demonstrate severe and pervasive subjective race-based hostility towards him renders unnecessary a ruling on Plaintiff's Objection to the Magistrate Judge's ruling before deciding the motion for summary judgment.

Moreover, even if this Court were to find that the alleged workplace conduct by McKnew created a racially hostile work environment, whether the employer is liable under Title VII or Section 1981 is a separate question.  In *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986), the Supreme Court declined to issue "a definitive rule on employer liability," but did state that it agreed with the EEOC "that Congress wanted courts to look to agency principles for guidance in this area."  Pointing out that the definition of "employer" in Title VII included any "agent" of an employer, the Court observed that the statute "evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible."  *Id.* But the Supreme Court rejected the ruling entered by the appellate court in that case that "employers are always automatically liable for sexual harassment by their supervisors."  *Id.*

In *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572 (10th Cir. 1990), the Tenth Circuit addressed the standard for employer liability in a case in which an employee complained of sexual harassment by a fellow employee.  The court defined employer negligence in the context of a gender based hostile work environment as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have

15

known." 916 F.2d at 577, quoting from *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516

(9th Cir. 1989).  In *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998), this

basis for liability was described as follows:

> "Under this theory of employer liability, the plaintiff must
> establish that the employer had actual or constructive
> knowledge of the hostile work environment but did not
> adequately respond to notice of the harassment." *Harrison
> v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 (10th Cir.) . . . .
> This is not derivative liability according to the doctrine of
> respondeat superior, but direct liability for negligence. *See
> Hirschfeld,* 916 F.2d at 577 n. 5.  Because an employer is
> only potentially liable for negligence in remedying and
> preventing harassment of which it negligently failed to
> discover, courts must make two inquiries:  first, into the
> employer's actual or constructive knowledge of harassment,
> and second, into the adequacy of the employer's remedial
> and preventative responses to any actually or constructively
> known harassment.

144 F.3d at 673.  Accordingly, this Court applies the two-part inquiry set forth in *Adler.*

Here, plaintiff has alleged in his Amended Complaint and the evidence of record

reflects, that plaintiff first complained about the alleged racially discriminatory behavior

on February 18, 2005, when he contacted defendant's Alert Aware Line (Amended

Complaint, ¶ 4.11; Exhibit J to Defendant's Motion at 7-8).  Because there is no basis

for finding that the defendant had actual or constructive knowledge of the alleged

hostile work environment before that date, it cannot be found liable under the

applicable Tenth Circuit law cited above for any hostile work environment actions that

occurred in 2003 or 2004 as it was not put on notice of such allegations by plaintiff.

Defendants assert that after plaintiff made his complaint to the Alert Aware Line,

it undertook an investigation of plaintiff's complaint and concluded that McKnew's

"direct and demanding" management style was not indicative of racial discrimination and was applied to Caucasian employees as well.  Nonetheless, the company claims that it provided a series of actions to improve McKnew's management style (Defendant's Motion at 22).

While plaintiff asserts that the defendant did not take action to promptly correct the alleged racially harassing behavior, that the investigation was incomplete, and that McKnew was not told to stop harassing and discriminating against plaintiff, nor was he disciplined (Plaintiff's Response at 43), he does not allege any specific racially hostile actions by McKnew after he made his complaint.  To be sure, plaintiff alleges that after making the complaint the defendant retaliated against him as discussed below, but none of those alleged actions, even if true, provide the basis for a hostile work environment claim.

For the reasons set forth above, defendant is entitled to summary judgment on plaintiff's claim of hostile work environment under Title VII and 42 U.S.C. § 1981.

### B.    Racial Discrimination in Conditions of Employment

As noted above, although not pled as separate claims it appears that plaintiff's claims of discrimination essentially relate to the following three aspects of his employment: his starting salary, his pay raises and bonuses while employed, and his performance reviews and disciplinary actions.  As defendant's argument differs as to each aspect, they are separately addressed in this Order.

Any claim of racial discrimination is subject to the burden-shifting analysis of *McDonnell Douglas*.  In order to establish a prima facie case of employment discrimination either under Title VII or under 42 U.S.C. § 1981 based on disparate

racial treatment, a plaintiff must demonstrate that: (1) he is a member of a protected

class; (2) he suffered an adverse employment action; (3) the adverse action occurred

under circumstances which give rise to an inference of unlawful discrimination.

*Kenderick,* 220 F.3d at 1225-27 & n.4.

Once the plaintiff establishes a *prima facie* case, the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the adverse

employment decision.  *McDonnell Douglas,* 411 U.S. at 802.  At the summary judgment

stage it then becomes plaintiff's burden to show that there is a genuine issue of

material fact as to whether the employer's proffered reason for the challenged action

is "unworthy of belief," thus pretextual.  *Randle v. City of Aurora*, 69 F.3d 441, 451

(10th Cir. 1995).  If plaintiff succeeds both in making out a *prima facie* case and in

showing that there is a factual issue as to whether defendant's proffered reasons are

pretextual, plaintiff's claim will withstand summary judgment.  *Id.*

### 1.    Same-Actor Inference

In an effort to disprove plaintiff's *prima facie* case as to all three aspects of

plaintiff's discrimination claim, defendant first argues for summary judgment on the

grounds that the same-actor inference negates a conclusion under the third element,

that the adverse action occurred under circumstances which give rise to an inference

of unlawful discrimination.  It argues that any conclusion of racial prejudice must be

presumed "unreasonable" if the prejudice is alleged against the same individual, here

claimed to be McKnew, who hired the plaintiff in the first instance (Defendant's Motion

at 14-15).  In support of this argument, defendant cites several decisions from other circuits.

The presumption set forth in the cases cited by the defendant was specifically urged upon the Tenth Circuit in *Green v. Yates*, 172 F.3d 878 (Table), 1999 WL 76845 at *2 (10th Cir., Feb. 18, 1999), where the trial court applied the presumption, but the Tenth Circuit panel expressly rejected the adoption of such a presumption stating: "We leave the doctrine to another day when it is squarely presented so that this court can give it the benefit of plenary consideration."  Defendant has not cited to, nor has this Court found, a Tenth Circuit decision that revisits this presumptive argument. Moreover, at least one recent District of Colorado case declined to adopt this analytical presumption.  *See Clement v. Sears, Roebuck and Co.,* 2005 WL 2453101 at *5 (D. Colo., Sept. 30. 2005).

Moreover, in each of the cases cited by defendant the facts only refer to instances where the employee was terminated or not rehired by the same person who originally hired the plaintiff.  None of the cases cited address examples of adverse employment action such as the three aspects alleged by plaintiff here.  *See e.g. Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (applying the same-actor inference because "claims that employer animus exist in termination but not in hiring seem irrational") (citation omitted).  Thus those cases, even if they applied in the Tenth Circuit, do not support summary judgment here.

Furthermore, there is a factual dispute as to whether McKnew was the sole decision-maker in hiring White, and the same actor inference would not be appropriate

when there are multiple hiring actors.  *See e.g. Schindler v. Bierwirth Chrysler/ Plymouth, Inc.*, 15 F. Supp. 2d 1054, 1058 (D. Kan. 1998).  Thus, the Court declines to decide the motion on the basis of the same-actor inference.

### 2.    Plaintiff's Claims Regarding His Starting Salary

Under the *McDonnell Douglas* framework, there does not appear to be a serious dispute that plaintiff has established a *prima facie* case regarding the disparity in starting salary.  The parties do not dispute that plaintiff is an African-American and thus a member of a protected class, that he alleged he suffered adverse employment actions in terms of his lower starting salary compared to three other non-minority individuals hired at about the same time as plaintiff into the same or similar positions.  Although defendant argues that there is no evidence of a racial animus based on the "same actor" theory as set forth above, the Court has rejected such argument.

Rather, the thrust of defendant's contention is that it has legitimate non-discriminatory reasons for what it describes as "minor differences in starting pay." (Defendant's Reply at 2).  Defendant asserts that plaintiff's salary, as well as those paid to the other simultaneous hirees, were based on "pay bands, experience, prior salary and what the applicants asked for." (*Id.* at 4).  Defendant, however, does not offer any explanation of the comparative experience, prior salary or "pay bands" applicable to the other hirees, or how such factors resulted in plaintiff receiving a lower starting salary. Rather, what defendant appears to rely on is its assertion that plaintiff was paid more than he was paid in his prior position with Sears, and he was paid $42,000 by defendant because that is "what he asked for." *Id.* at 4; Defendant's Motion at 17.

Defendant may be inferring, although it does not directly state, that the other applicants asked for and received higher salaries.

Plaintiff responds that the other applicants, Rodney Schulz, Todd Moran and Theresa Simpkins, were given the opportunity to "request or negotiate higher salaries," inferring that plaintiff was not, citing to Exhibits 26 and 27 to Plaintiff's Response, which are excerpts from the Schulz deposition testimony (Exhibit 26) and an affidavit from Schulz (Exhibit 27).  *See* Plaintiff's Response at 4.  However, the Court has reviewed the Schulz affidavit (Exhibit 27) and finds no indication therein that he was given the opportunity to "negotiate" his salary, as he merely attests that he was "offered" the job at a salary of $45,000 per year (Exhibit 27 to Plaintiff's Response at 1).  Plaintiff has not cited to any specific page of the Schulz deposition testimony, but on its own review the Court has not located any reference to Schulz being given an opportunity to "negotiate" his salary.

Nonetheless, plaintiff has created a genuine issue of fact regarding the determination of his starting salary for in his own affidavit he attests that he was not asked about his then-current salary at Sears "nor was I asked about the amount of salary I desired" for the position with Home Depot (Exhibit 8 to Plaintiff's Response, ¶ 1).  Thus, contrary to the defendant's assertion that plaintiff was paid "what he asked for" plaintiff appears to be stating he was never asked his salary terms.  This factual dispute creates a sufficient showing of pretext as to the defendant's tendered legitimate nondiscriminatory reason so as leave the matter for the determination of the jury.

Insofar as the plaintiff alleges discrimination in his starting salary under 42

U.S.C. § 1981, the defendant's motion for summary judgment is denied but the claim

is DISMISSED insofar as it was intended to be pled under Title VII as plaintiff's hiring

occurred prior to the 300 days before his filing an EEOC charge.

### 3.    Plaintiff's Claims Regarding His Pay Raises

Although plaintiff's Amended Complaint alleges discrimination in "pay raises and

bonuses" (Amended Complaint, ¶ 4.6), it provides no specifics as to when or how much

was at issue.  Plaintiff's Response, however, contends that plaintiff was discriminated

in connection with his raise in 2004 because Schulz received an increase in his annual

salary of $1,400, or 3.11%, whereas plaintiff received an increase in his annual salary

of $1,300, or 3.09% (Plaintiff's Response at 40), and in connection with his raise in

2005 because plaintiff received a $1,000 raise to his annual salary, or 2.31%, whereas

two other LPMs, Jenkins and Cockerham, received raises of $1,260, or 3.0% (*id.* at 39).

Defendant asserts it is entitled to summary judgment on these claims because

as to the 2005 pay increase, plaintiff testified in his deposition that it was Moran,

Schulz and Simpkins who were his salary "comparators" and did not mention Jenkins

and Cockerham, and as to both increases because the different amounts are "de

minimis" (Defendant's Reply at 5).  Defendant also contends that the person who set

plaintiff's raise was Frank Farwell, as to whom plaintiff did not claim discrimination (*id.*

at 6), but it is not clear as to which year Farwell set plaintiff's raise.  Defendant further

argues that even if Jenkins and Cockerham are valid comparators, the increases they

got, based on the ratings they received and the "pay band" they were in are the same

as plaintiff received when he was in that "pay band," and as to year 2005, they are "not similarly situated" to plaintiff. (*Id.*)

The Court is inclined to agree with defendant that a pay increase differential of $100 per year, or even $260 per year, verges on the *de minimis*. If that were the only discrimination claimed by plaintiff the Court might agree that it should be dismissed. But, because the pay raise claim is part of a broader claim of discrimination alleged by plaintiff, including the starting pay claim described above, the damages that may result from the various pay differentials alleged by plaintiff may amount to a more significant sum.

To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994). Consequently, disparate treatment cannot be shown by comparing the application of an employer's policy or practice to employees who are not similarly situated. The employees would be similarly situated if they all worked in similar positions. *Id.* Or, as further explained by the Tenth Circuit, similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. *Aramburu v. Boeing*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted).

While it may be that plaintiff is somewhat selective or even inconsistent as to the comparators he presents as to his different claims, it does appear from the record that each of the comparators held the same position, had the same supervisor and was subject to the same rating system as plaintiff. The selectivity or validity of the plaintiff's

23

comparison may be questioned on closer examination and may ultimately be found lacking in evidentiary weight, but the Court cannot determine from the record before it that it would be unreasonable for a jury to find that in the two different years at issue, the plaintiff did not receive the same raises as those "similarly situated."

Accordingly, it can not grant summary judgment on plaintiff's claims of discriminatory pay increases to the extent they are alleged to be in violation of Section 1981. The alleged discriminatory pay increase claims will not be submitted to the jury as claims under Title VII, however, unless plaintiff demonstrates that they were the subject of a timely filed charge with the EEOC.

### 4.    Plaintiff's Claims Regarding His Performance Reviews and Discipline

Plaintiff's Amended Complaint, while alleging that plaintiff was subject to discrimination in connection with his performance reviews and disciplinary actions (Amended Complaint, ¶ 4.6) is again short on specifics, giving no dates of the reviews and no description of the alleged discriminatory discipline.

Plaintiff's Response sets forth numerous paragraphs regarding an asserted disciplinary action, referred to as a performance improvement plan ("PIP"), and an asserted lower rating on plaintiff's performance review for the year of 2004 which was apparently issued in the Spring of 2005 (Plaintiff's Response at 16-26). Essentially plaintiff claims that McKnew, and other of defendants' supervisors, pressured plaintiff's immediate supervisor Firsich to place plaintiff on a PIP, and to award plaintiff a lower rating on his 2004 review. Ostensibly, they took these alleged actions due to plaintiff's

race.  Plaintiff asserts that Firsich eventually "capitulated" to the pressure and "[i]n or around February 22, 2005," plaintiff was placed on a 60-day PIP drafted by Firsich and approved by Jean Farrington, the regional human resource supervisor for defendant. (Plaintiff's Response at 24-25).  Plaintiff also asserts that Firsich gave an a rating of "I 4 minus," which plaintiff describes as the "lowest performance rating available" (Plaintiff's Response at 18), rather than the rating of "P 3 equals" which is what Firsich initially recommended.

Defendant asserts that although Firsich recommended that plaintiff be placed on a PIP, plaintiff was never actually placed on one (Defendant's Reply at 8).  It further asserts that although plaintiff was tentatively given a rating of "I 4 minus" it was eventually changed to "P 3 equals." (*id.*; Defendant's Motion at 15).  Defendant argues that even if plaintiff was tentatively rated "I 4 minus," or did receive a PIP, he has made no showing that these occurrences constitute adverse employment actions within the meaning of the statutes, as there is no evidence that they increase the likelihood the plaintiff would be terminated or denied promotions (Defendant's Reply at 9).

Although plaintiff paints a lengthy and complex portrait of his 2004 review, the matter appears to clarified by the deposition testimony of Farrington, which is cited by plaintiff.  While Farrington testified that plaintiff was placed on a PIP, the testimony also made clear that a PIP would only be implemented if the employee had a performance rating of "P 4 minus" or "I 4 minus." (Farrington Depo., Exhibit 31 to Plaintiff's Response at 48-50).  Once plaintiff's rating was changed to "P 3 equals," which

appears to have occurred no later than April 5, 2005 (*see* Exhibit R to Defendant's Reply), he would not have been subject to a PIP.

Defendant asserts that as a result of these events, plaintiff can show no adverse action (Defendant's Reply at 9). Plaintiff, on the other hand, asserts that as result of these events he received a lower pay raise in 2005 than other LPMs who also received ratings of "P 3 equals." (Plaintiff's Response at 30). As discussed above, whether that was the result of racial discrimination is a disputed matter that has to be presented to the jury. Accordingly, although the damages relating to plaintiffs claim of discriminatory performance reviews and discipline may be duplicative of his damages claim for discriminatory pay raises, summary judgment on the claim cannot be entered on the present record before the Court.

### 5.   Plaintiff's Claims Regarding Retaliation

Title VII bars employers from retaliating against an employee for engaging in a "protected activity." 42 U.S.C. § 2000e-3(a). An employee engages in a protected activity when the employee "has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing . . . . *Id.* Title VII's definition of protected activity is broad enough to include informal as well as formal complaints. *See Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir. 1984). Thus plaintiff's complaint to the defendant's Aware Line on February 18, 2005 constitutes protected activity.

A plaintiff can satisfy the requirements for a *prima facie* case of Title VII retaliation by showing that (1) he engaged in protected activity, (2) there was an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998). The standards for evaluating Title VII retaliation claims are identical to those for § 1981 claims. *Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006), citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 n.1 (10th Cir. 1998).

Plaintiff's Amended Complaint alleges various acts of retaliation by defendant after plaintiff's complaint to the Aware Line on February 18, 2005, including denial of promotion opportunities (Amended Complaint, ¶ 4.10), which plaintiff has since dismissed; the receipt of negative performance reviews and institution of the PIP against him discussed above (*id.*, ¶ 4.14); limited ability for transfer (*id.*); and the failure of defendant's human resources department to address his complaints (*id.*, ¶ 4.16).

In his response plaintiff also asserts that he was denied the opportunity to participate in defendant's program to aid victims of Hurricane Katrina, claiming that was a benefit provided by defendant which plaintiff "really wanted to participate in" (White Affidavit, Exhibit 8 to Plaintiff's Response, ¶ 4), as well as the opportunity to train new LPMs and conduct operations audits in other stores (Plaintiff's Response at 32).

Defendant first asserts that these situations do not rise to the level of adverse employment actions as described by *Sanchez, supra*, and other Tenth Circuits cases (Defendant's Reply at 10-11). Relying on other Tenth Circuit authority, defendant

27

argues that the lost opportunity to train employees does not significantly change his employment status (Defendant's Motion at 23).

The Supreme Court's recent decision in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (June 22, 2006), endorsed a broad view of what constitutes retaliation because "Title VII's substantive provision and its anti-retaliation provision are not coterminous." *Id.* at 2414. In presenting a general, objective standard, the Supreme Court placed the burden on the plaintiff to demonstrate that "a reasonable employee would have found the challenged action materially adverse" in that it could have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 2415 (quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)). While the ruling stated that a jury need not find a relation between the retaliation and the conditions of employment, *id.* at 2416, the opinion did not disturb the requirement that there must be a causal link between some protected activity and adverse action. *See e.g. Sanchez,* 164 F.3d at 533-34.

The Court further endorsed a fact-specific determination of adversity since "context matters" and "any given act of retaliation will often depend on the particular circumstances." *Burlington Northern*, 126 S.Ct. 2415. Even with the contextual analysis, the materially adverse action cannot arise from "petty fights or minor annoyances." *Id.* Further excluded from that definition of material adversity are those acts that merely have a *de minimis* impact upon an employee's future job opportunities. *Hillig v. Rumsfeld,* 381 F.3d 1028, 1033 (10th Cir. 2004); *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001).

Applying the Supreme Court's standard of retaliation as described in *Burlington Northern*, the actions alleged to be taken in retaliation need not change the employee's employment status in order to be materially adverse.  126 S.Ct. 2415.  Thus, if  training new LPMs, conducting audits of other stores, or working with Hurricane Katrina victims would contribute "significantly to the [plaintiff's] professional advancement" through higher leadership ratings and increased qualification for promotion, then the actions could meet the material adversity standard.  126 S.Ct. 2415-16.  Similarly, because the language of plaintiff's performance review remained substantively unchanged despite the change in his final rating, he may continue to be adversely impacted by the allegedly retaliatory process.  The issue of whether these events are materially adverse actions are genuine factual disputes that preclude the plaintiff's retaliation claim from being decided upon summary judgment.

Defendant also appears to argue that the plaintiff's complaint about the 2004 performance review cannot be the subject of a retaliation claim because plaintiff's theory that Firsich was pressured to give low rating depends on the pressure from McKnew and Zimberof which came before and not after plaintiff's February 18, 2005 complaint to the Aware Line (Defendant's Motion at 23-24).  Plaintiff's Response suggests that the pressure continued after the complaint was made (Plaintiff's Response at 22-26).  Only the unfolding of the facts at trial will clarify this situation.

The defendant's motion for summary as to plaintiff's claims of retaliation is therefore DENIED.

**VII.    CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. # 80) is GRANTED in part and DENIED in part.

It is GRANTED with respect to claims of a racially hostile work environment and those claims are DISMISSED with prejudice.  In addition, plaintiff's claims of denial of promotion opportunities, and/or purposely not being informed of promotion opportunities, due to alleged racial discrimination or due to alleged retaliation, are DISMISSED with prejudice pursuant to plaintiff's request.

It is DENIED with respect to plaintiff's claims of discrimination in the conditions of employment, and his claims of retaliation, to the extent such claims are asserted under 42 U.S.C. § 1981, and under Title VII to the extent plaintiff demonstrates that the claims were the basis of a charged of discrimination timely filed with the EEOC or Colorado Civil Rights Division.

DATED: August 3, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge